UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X    **Case No. 1:24-cv-07875**
SUSAN COMPETELLO, on behalf of herself
and all others similarly situated,

               Plaintiffs,            **Hon. Valerie E. Caproni, U.S.D.J.**

        -against-


SOULFLORA, INC.,

               Defendants.
-------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SOULFLORA, INC.'S MOTION TO DISMISS PURSUANT TO FED R. CIV. P. 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6)


**SHAPIRO CROLAND REISER APFEL & DI IORIO, LLP**
One Grand Central Plaza, Suite 4600
New York, NY 10165
jmlurie@shapirocroland.com
ereiser@shapirocroland.com

*Attorneys for Defendant, Soulflora, Inc.*


On the Brief:

    Joshua M. Lurie, Esq. (N.Y. Bar Id - 5162466)
    Eric D. Reiser, Esq. (N.Y. Bar Id – 4910741)

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ........................................................................................1

**FACTUAL BACKGROUND & PROCEDURAL HISTORY**.......................................2

**I. THE COMPLAINT MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(1) AS PLAINTIFF LACKS STANDING TO BRING THESE CLAIMS**.................................3

    *1.   This Court Lacks Subject Matter Jurisdiction as There is no Case or Controversy between the Parties*.............................................................................................................*4*

        a.   Federal Question Jurisdiction and Standing in ADA Matters ....................................5

        b.   Plaintiff Lacks Standing Because She Suffered No Legally Cognizable Harm..........7

        c.   Plaintiff's Complaint is Merely a Recitation of the "Magic Words" ........................11

        d.   This Court Cannot Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims Because Plaintiff Lacks Article III Standing..............................................................13

**II. THE COMPLAINT MUST BE DISMISSED FOR LACK OF VENUE AND PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(2) AND (3)** ...........14

    *1.   The Applicable Standard for 12(b)(2) and (3) Motions* .................................................*15*

    *2.   This Court Lacks Personal Jurisdiction Over Defendant Because Defendant Does Not Conduct Business In New York – Nor Could It* ...................................................................*16*

**III. PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(B)(6)** .................................................................20

    *1.   The Standard of Review under Fed. R. Civ. P. 12(b)(6)*.................................................*20*

    *2.   Plaintiff's Complaint Fails to Meet the Iqbal/Twombly Standard* ...............................*22*

**CONCLUSION** .......................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Arbaugh v. Y&H Corp.*, 546 *U.S.* 500 (2006) ...............................................................5
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).................................................................passim
*Bartosiewicz v. Nelsen*, 564 F. Supp. 3d 287 (W.D.N.Y. 2021) ...............................15, 16
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)......................................................21
*Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534 (1985)...................................13
*Best Van Lines v. Walker*, 490 F.3d 239 (2d Cir. 2007)............................................15
*Bolt Elec. v. City of New York*, 53 F.3d 465 (2d Cir. 1995) ......................................20
*Calcano v. Swarovski N. Am. Ltd.*, 36 *F.4th* 68 (2d Cir. 2022)...........................5, 6, 7, 13
*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) ...............................4, 5
*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411 (2d Cir. 2015)...........7
*Cottman Transmission Sys. v. Martino*, 36 F.3d 291 (3d Cir. 1994)............................18
*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)..............................................14
*Daniels v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir 2005) ...................18, 19
*Ford Motor Co. v. Mont. Eigth Judicial Dist. Court.*, 141 S.Ct. 1017 (2021) ............17
*Goldenberg v. Metropolitan Transp. Auth.*, 217 N.Y.S.3d 429 (Sup. Ct. N.Y. Cty. 2024) .........22
*Gordon v. PL Long Beach, LLC*, 74 A.D.3d 880 (N.Y. App. Div. 2d. Dep't 2010)....................22
*Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353 (2d Cir. 2005)....................................19
*Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2023) ...........................13, 14
in *Feldheim v. Financial Recovery Services, Inc*., 257 F.Supp.3d 361 (S.D.N.Y. 2017) ...........21
*Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229 (2d Cir.2007).........................21
*Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221 (11th Cir. 2021) .............................6
*Kreisler [v. Second Ave. Diner Corp.]*, 731 F.3d 184 (2d Cir. 2013) ...........................6
*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) 20
*Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979)...............................................18
*Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50 (2d Cir. 2012)..............................15
*Lujan v. Defs. Of Wildlife*, 504 U.S. 555 (1992) ......................................................6
*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ...................................20
*Reed Int'l, Inc. v. Afg. Int'l Bank*, 657 F. Supp. 3d 287 (S.D.N.Y. 2023)....................17
*Roberts v. Criss*, 266 F.296 (2d. Cir. 1920)............................................................10
*Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410 (S.D.N.Y. 2009) .........17
*Spiegal v. Schulmann*, 604 F.3d 72 (2d Cir. 2010)...................................................15
*Spokeo, Inc. v. Robbins*, 578 U.S. 330 (2016)........................................................14
*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)...............................................5, 6
*Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992) ........................................20
*Winegard v. Golftec Intellectual Prop. LLC*, 674 F. Supp. 21 (E.D.N.Y. 2023) .........6, 7

## STATUTES

21 U.S.C. §§ 841(a)(1)-(2) ...................................................................9, 10, 23
21 U.S.C.S. §§ 812(c)(c)(10), (17) ........................................................9, 10, 23
28 U.S.C. § 1331 ...........................................................................................5
28 U.S.C. § 1331(b)(2) ...................................................................................18

28 U.S.C. § 1367(c)(3) ...........................................................................................................14
28 U.S.C. § 1391(b)..........................................................................................................14, 15
28 U.S.C. § 1391(b)(1)....................................................................................................15, 18
28 U.S.C. 1391(b)(2)........................................................................................................15, 18
42 U.S.C. § 12101 *et. seq.* ..............................................................................................4
N.J.S. § 2C:35-2.................................................................................................................9
N.J.S.A. § 24:6l-33.............................................................................................................9
N.J.S.A. § 24:6l-42.........................................................................................................2, 9
N.J.S.A. § 24:6l-44(j)(1).................................................................................................9, 23
N.J.S.A. §§ 24:6l-1 through 24:6l-30.............................................................................2, 10
N.Y. C.P.L.R. § 302(a).......................................................................................................15

## RULES

*Fed. R. Civ. P.* 12(h)(3) ....................................................................................................4
*Fed. R. Civ. P.* 12(b)(1) .................................................................................................4, 13
*Fed. R. Civ. P.* 12(b)(2) ...............................................................................................15, 17
*Fed. R. Civ. P.* 12(b)(3) ...............................................................................................14, 20
*Fed. R. Civ. P.* 12(b)(6) ...........................................................................................14, 20, 25

## REGULATIONS

N.J.A.C. § 17:30-14.8(b) ...................................................................................................9

## PRELIMINARY STATEMENT

"Don't feed the trolls; nothing fuels them so much."

These words from Oscar Wilde more than 125 years ago are more relevant now than at the time of utterance.  Indeed, the dockets of the courts are clogged with serial filers, without standing, seeking to extort a settlement through aggressive (and frequently frivolous) serial filings against parties.  For a time, it was copyright claims.  Now, the new target appears to be ADA website accessibility claims.  This Plaintiff is one of such serial filers who does not have standing to bring claims and has clogged the docket with such frivolous claims which appear solely intended to extort money through the filing of "fill in the blanks" and "cut and paste" complaints.

Indeed, a cursory review of the docket shows that this Plaintiff, in a few short months, has filed a baker's dozen of identical complaints in this Court, many of them against cannabis companies outside of New York which, even if presuming were true, would indicate a lack of standing on plausibility since Plaintiff cannot order cannabis online to be shipped to her home from New Jersey under state or federal law.  More egregiously, New Jersey's highly regulated cannabis industry forbids the delivery of cannabis out of state, and places stringent regulations on advertising practices for licensed dispensaries.  In fact, Plaintiff's sole claims as to jurisdiction and venue appear to be predicated upon her viewing a website which, as the Court is well aware, is not sufficient grounds for the imputation of personal jurisdiction or venue (as discussed below).

Notwithstanding, the ultimate issue is that, even if there was jurisdiction, there is no case or controversy as the complaint itself evidences that Plaintiff is cutting and pasting her complaint and seeking to commit a federal crime.

It is time to starve the trolls.  This matter must be dismissed.

## <u>FACTUAL BACKGROUND & PROCEDURAL HISTORY</u>

As a motion to dismiss, the Complaint, as drafted, is accepted as true. However, from same, the following salient facts are relevant.

Defendant, SoulFlora Inc. ("Defendant") operates a licensed Class 5 Cannabis Retail facility (i.e., dispensary) located at 2713 NJ-23 #5A, West Milford, New Jersey 07435. Defendant has received all necessary authorizations for the sale of cannabis in New Jersey pursuant to New Jersey's Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act ("CREAMMA"), which is codified as N.J.S.A. § 24:6l, *et seq.* Per CREAMMA, Defendant is only authorized to sell products at the premises for which "cannabis items are retailed" which is in West Milford, New Jersey. *See* <u>Declaration of Tommy Castronova</u> (hereinafter "Castronova Dec.") at ¶ 4, Ex. A. *See also* N.J.S.A. § 24:6l-42. Defendant markets its cannabis products ***solely*** to New Jersey residents over the age of 21 as confirmed by its website (https://www.soulflora.com/). Defendant neither advertises, nor conducts business, in the State or City of New York. Defendant purchased and installed an Accessibility Widget, which complies with Web Content Accessibility Guidelines version 2.1 ("WCAG 2.1"), on or around October 16, 2024 – before service of the Complaint on Defendants. *See* <u>Castronova Dec.</u> at Ex. B. Plaintiff is a resident of the State and City of New York.  On or about October 17, 2024, Plaintiff filed the instant Complaint against SoulFlora. The Complaint and Summons were served upon Defendant on or around October 22, 2024. *See* <u>Lurie Dec.</u> at Ex. 1.

As set forth in the Complaint, Plaintiff alleges the following:  Plaintiff was diagnosed with retinitis pigmentosa approximately 25 years ago. *See* <u>Lurie Dec.</u> at Ex. 1, ¶ 26. Plaintiff states that she managed the pain from her condition for approximately 10 years with prescribed medication, at which point she started using "100% legal" cannabis products that "can be shipped anywhere in

the United States, including New York." *See* <u>Lurie Dec.</u> at Ex. 1, ¶ 27. Plaintiff alleges that she

was injured while attempting to access the Defendants' website on or around October 11, 2024,

and when browsing, she was unable to "search for and purchase Defendants' products and services,

including their premium edible, "1:1 Blue Razzleberry Mega Pearl – CBG/THC…" as her screen

reading software could not read the descriptions of products. *See* <u>Lurie Dec.</u> at Ex. 1, ¶¶ 25, 34,

35. Plaintiff alleges that the reason her screen reader software could not produce audible

descriptions was due to a lack of "Alternate Text" on Defendants' website for the 1:1 Blue

Razzleberry Mega Pearl product and other similar products. *See* <u>Lurie Dec.</u> at Ex. 1, ¶ 35. Plaintiff

accordingly states that her counsel conducted an accessibility audit of Defendants' website on

October 15, 2024, and this accessibility audit showed that Defendants' website was noncompliant

as of that date. *See* <u>Lurie Dec.</u> at Ex. 1, ¶ 37.[1] As such, Plaintiff requests injunctive relief pursuant

to the Americans with Disabilities Act, enjoining Defendants from "violating the Americans with

Disabilities Act" and the "laws of New York." *See* <u>Lurie Dec.</u> at Ex. 1, p. 28. Plaintiff's sole

predicate for jurisdiction and venue appear to be a website.

     This motion follows.

## **LEGAL ARGUMENT**

### **I**
### **THE COMPLAINT MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(1) AS PLAINTIFF LACKS STANDING TO BRING THESE CLAIMS**

     Put simply, Plaintiff lacks any standing to file this Complaint against Defendant because

Plaintiff has suffered no actual injury under the Americans with Disabilities Act ("ADA"), 42

---

[1] If the Court does not grant this motion, we will subsequently be moving to have Plaintiff's counsel removed as counsel as it appears that they are a necessary witness on a contested issue of fact by the sworn statement of Plaintiff that it was her attorneys who performed the audit.

U.S.C. § 12101 *et. seq*., by purportedly accessing Defendant's website to purchase cannabis that can only legally be purchased, and consumed, in New Jersey. As demonstrated in Exhibit 5 to the Lurie Dec., Plaintiff (and her counsel) are serial filers of "cookie cutter," "copy and paste," "fill in the blank" complaints in this District Court, against various entities across the United States, asserting violations under the ADA with respect to allegedly noncompliant websites, with at least twelve (12) other identical Complaints filed in this district over the last 6 months.

For the reasons below, Plaintiff's Complaint must be dismissed *under Fed. R. Civ. P.* 12(b)(1) for lack of standing because Plaintiff has failed to plead any facts describing a legally cognizable injury that she suffered by accessing Defendant's website.

1. **This Court Lacks Subject Matter Jurisdiction as There is no Case or Controversy between the Parties**

*Federal Rule of Civil Procedure* 12(b)(1) provides lack of subject-matter as a defense to a Complaint which may be raised by motion. *Fed. R. Civ. P.* 12(b)(1). *Fed R. Civ. P.* 12(h)(3) further provides that "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Fed R. Civ. P.* 12(h)(3). A defendant may either challenge a complaint facially or with facts from outside of the pleadings. *Carter v. HealthPort Techs., LLC*, 822 *F.3d* 47, 56-7 (2d Cir. 2016). In order to oppose such a motion, a Plaintiff "will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion… reveal the existence of factual problems.'" *Id*. Lastly, a plaintiff "is entitled to rely on the allegations in the Pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Id*.

Because Defendant has presented evidence demonstrating that Plaintiff lacks standing to file the within Complaint by failing to plead an actual harm suffered on account of accessing

Defendant's website, Plaintiff must come forward with evidence that she has suffered an actual harm in order for her Complaint to survive this motion.

### a. <u>Federal Question Jurisdiction and Standing in ADA Matters</u>

Plaintiff invokes 28 U.S.C. § 1331 as the basis for this Court's jurisdiction over her patently frivolous claims brought under the ADA and New York state statutory counterparts. For a federal court to have subject matter jurisdiction, a Plaintiff must show that their case "arises" under a federal law. *Arbaugh v. Y&H Corp.*, 546 *U.S.* 500, 513-4 (2006).

Article III of the United States Constitution "confines federal judicial power to the resolution of 'Cases' and 'Controversies'. For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case – in other words, standing. To demonstrate a personal stake, Plaintiff must be able to sufficiently answer the question: 'What's it to you?'" *TransUnion LLC v. Ramirez*, 594 *U.S.* 413, 423 (2021). This is, fundamentally, what constitutes federal question jurisdiction and is embodied in 28 U.S.C. § 1331. For a party to successfully establish that a federal court has subject matter jurisdiction, they must raise a colorable claim and have a personal stake in a given controversy. *Calcano v. Swarovski N. Am. Ltd.*, 36 *F.4th* 68, 74 (2d Cir. 2022). In fact, at every stage of litigation, "the party invoking jurisdiction bears the burden of establishing the elements of Article III standing." *Id (*citing *Carter v. HealthPort Techs., LLC* 822 F.3d 47, 56 (2d Cir. 2016)).

The *Calcano* case cited above is directly on point to this matter, and provides that the Supreme Court has made clear that: "to establish standing, a plaintiff must show (i) that he suffered an injury that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id* at 74 (citing *Transunion* at 2203). Indeed, specifically in the:

ADA context, we have held that a plaintiff seeking injunctive relief has suffered an injury in fact when: (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [businesses] to plaintiff's home, that the plaintiff intended to return to the subject location. *Kreisler [v. Second Ave. Diner Corp.]*, 731 F.3d 184, 187-88 (2d Cir. 2013). These considerations may assist courts in determining whether a prospective injury is sufficiently "concrete and particularized." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992). In particular, the focus of the third factor – i.e., intent to return based on past visits and proximity – is to ensure that the risk of harm is sufficiently imminent and substantial to establish standing. *Transunion*, 141 S. Ct. at 2210. Thus, the central inquiry ***is not whether a complaint pleads the magic words that a plaintiff 'intends to return,' but if, 'examined under the totality of all relevant facts,' the plaintiff plausibly alleges 'a real and immediate threat of future injury.'*** *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1233 (11th Cir. 2021) (including "definiteness and the plaintiff's plan to return" and "frequency of the plaintiff's travel near the defendant's business" as factors to consider in assessing whether a plaintiff "faces a real and immediate threat of future injury.")

*Calcano*, 36 F.4th at 74 (emphasis added).

With respect to the physical proximity component to establish standing to sue a defendant for having a noncompliant website under the ADA, this Court's sister courts have held that "proximity is not probative of actual injury in website cases because everyone's computer is proximate." *Winegard v. Golftec Intellectual Prop. LLC*, 674 F. Supp. 21, 25 (E.D.N.Y. 2023). A party may not "merely parrot the legal standard." *Id*.

In cases of serial filers of these types of actions, like the Plaintiff here, the Second Circuit and Eastern District have provided that that a court cannot "'ignore the context of Plaintiff's transparent cut-and-paste and fill-in-the-blank pleadings' across hundreds of substantively identical lawsuits;' that 'identically alleged the same essential claim'… [in *Calcano*] the Second Circuit concluded that the judicial experience and common sense suggest that these complaints are

a result of their mass production, thereby rendering each Plaintiff's cookie-cutter assertion of standing implausible." *Winegard*, 674 F. Supp. at 26 (citing *Calcano* 36 F. 4th at 77, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). This Plaintiff, regardless of the Court's acceptance of her allegations as true, still "bears the burden of alleging facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Calcano*, 36 F. 4th at 75 (citing *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015)). Further, "[a]ssessing plausibility is as context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal*, 556 U.S. at 697).

### b.  Plaintiff Lacks Standing Because She Suffered No Legally Cognizable Harm

As described above, for a party to show they have suffered an *actual injury under the ADA* worthy of injunctive relief, they must demonstrate that they (1) suffered past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [businesses] to plaintiff's home, that the plaintiff intended to return to the subject location. *Calcano*, at 36 F.4th 74. Plaintiff has failed to plead in her Complaint that she has suffered any injury by accessing Defendant's website and any facts suggesting any such injury are plainly implausible.

Plaintiff, who is allegedly visually impaired, asserts in her Complaint that she was precluded from purchasing cannabis edibles on Defendant's website because the pictures of the products for purchase at Defendant's dispensary lack "alternative text," which is a text-based representation of non-text content that is read by screen-reader software so that people with visual or cognitive disabilities can access and understand the non-text content. *See* Lurie Dec. at Ex. 1, ¶ 35. Plaintiff alleges that she "discovered Defendant's website around August 10, 2024 as a result

of a glowing recommendation by a close friend who had been aware of Plaintiff's condition, and the potential benefits and uses of marijuana and related products[,]" while also claiming that she "was injured when attempting to access Defendant's website… around October 11, 2024, from her home in New York County…" *See* <u>Lurie Dec.</u> at Ex. 1, ¶¶ 25, 28.[2] Amazingly, Plaintiff parrots ***the same allegation*** in each Complaint she has filed against cannabis dispensaries across both New York, and New Jersey. *See* <u>Lurie Dec.</u> at Ex.'s 2-4. October 11, 2024, the date Plaintiff claims she accessed Defendant's website, was just six (6) days before the date Plaintiff filed the instant suit and around the same time Plaintiff filed her other suits. *See* <u>Lurie Dec.</u> at Ex. 5. Plaintiff further alleges that, in order to treat her retinitis pigmentosa, she "made the decision to cease the use of… prescribed medications upon discovering that specific strains of marijuana (and related products) could also provide significant pain relief and is 100% legal and can be shipped anywhere in the United States, including New York."[3] *See* <u>Lurie Dec.</u> at Ex. 1, ¶ 27.

Even accepting Plaintiff's central allegation as true, i.e. that she could not purchase cannabis products on Defendant's website for delivery to her home in New York because the pictures on the website lacked alternative text, her Complaint fails to adequately plead that she has suffered a legally cognizable harm to confer her with Standing to assert a claim against Defendant under the ADA. This is because under New Jersey law, Defendant, whose dispensary is located in

---

[2] In each of the Complaints recently filed by Plaintiff against cannabis dispensaries across the United States, she repeats the identical allegation that she "discovered" the applicable defendant's website "as a result of a glowing recommendation from a close friend." *See*, e.g., <u>Lurie Dec.</u> at Ex. 2, ¶ 28 (S.D.N.Y. Civil Case No. 1:24-cv-07861-LGS), <u>Lurie Dec.</u> at Ex. 3 ¶ 28 (S.D.N.Y. Civil Case No. 1:24-cv-07961-JPC), <u>Lurie Dec.</u> at Ex. 4, ¶ 26 (S.D.N.Y. Civil Case No. 1:24-cv-07960-KPF).

[3] As discussed below, Plaintiff is absolutely wrong about the right to ship cannabis or derivatives thereof across the United States or into New York as such would be a federal crime. Such would also be a criminal act in New Jersey as well as New York (for importation of interstate cannabis and not purchased from a licensed New York cannabis dispensary).

West Milford, New Jersey, cannot legally ship or deliver cannabis products to customers in other states, nor does Defendant's website contain any such representation. *See* <u>Castronova Dec.</u> at ¶¶ 3-5. *See also* N.J.S.A. § 24:6l-42; N.J.S.A. § 24:6l-44(j)(1); N.J.A.C. § 17:30-14.8(b). Rather, New Jersey law mandates that customers purchase cannabis products from licensed dispensaries located in New Jersey and prohibits interstate purchases or deliveries. *See* N.J.S.A. § 24:6l-42 (a cannabis retailer "shall have a Class 5 Retailer license issued by the commission *for the premises at which cannabis items are retailed…*") (emphasis added); *see also* N.J.S.A. § 24:6l-44(j)(1) (dispensaries that deliver cannabis products may only do so via a licensed delivery service, and these deliveries may only be made to customers at their personal or temporary residence within the State of New Jersey); N.J.S.A. § 24:6l-33 (CREAMMA's definition of Cannabis excludes "marijuana" as defined in N.J.S.2C:35-2); N.J.S. § 2C:35-2 (New Jersey's criminal code's definitions explicitly excludes "cannabis as defined in section 3 of P.L.2021, c.16 which is cultivated and produced for use in a cannabis item, as defined in that section, in accordance with [NJ CREAMMA]"). Cannabis sold through non-licensed sources is not *legally* "Cannabis" in New Jersey – it is marijuana. Defendants are licensed retailers of cannabis, and its products are not legally marijuana in New Jersey.

Moreover, under federal law, Plaintiff cannot purchase cannabis products from Defendant's New Jersey dispensary and transport them across state lines to New York. *See* 21 U.S.C. §§ 841(a)(1)-(2); *see also* 21 U.S.C.S. §§ 812(c)(c)(10), (17). Accordingly, there is no scenario under which Plaintiff could have: (1) legally purchased cannabis products from Defendant's dispensary and transported them back to New York; or (2) purchased cannabis products from Defendant's website for delivery to her residence in New York. Indeed, it is a felony under federal law to ship or transport Delta-9 THC cannabis products (which are the only cannabis

products advertised for sale at Defendant's dispensary on its website) across state lines. *See* 21 U.S.C. §§ 841(a)(1)-(2); *see also* 21 U.S.C.S. §§ 812(c)(c)(10), (17).

Neither Defendant's failure to make its website accessible for Plaintiff to commit a federal crime, nor Plaintiff's mistaken belief that she could legally purchase cannabis from Defendant's dispensary in New Jersey for shipment or transport to her house in New York, confers her with standing to sue Defendant under the ADA. *See* <u>Lurie Dec.</u> at Ex. 1, ¶ 27. Similarly, Plaintiff, as a matter of law, cannot avail herself to the any remedy under the ADA when she purportedly accessed Defendant's website to commit a federal crime. *See*, e.g., *Roberts v. Criss*, 266 F.296, 301 (2d. Cir. 1920) (providing "No court will lend its aid to a man who founds his cause of action on an immoral or illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appears to arise *ex turpi causa* or the transgression of a positive law of this country, there the court says he has no right to be assisted.")

As evident in Plaintiff's complaint, Plaintiff does not appear to understand the legalities of New Jersey's regulatory scheme for licensed medicinal and recreational cannabis, which has been on the books since at least 2010, when the State of New Jersey passed the "Jake Honig Compassionate Use Medical Cannabis Act." This Act permitted <u>*New Jersey residents*</u> to obtain a medical card to purchase cannabis from <u>*New Jersey licensed dispensaries*</u>. *See* N.J.S.A. §§ 24:6l-1 through 24:6l-30. Indeed, Plaintiff's complaint, which appears to be form, infers wrongly that New Jersey's cannabis markets have operated in a grey zone for at least ten years – which has no basis in law nor fact. *See* <u>Lurie Dec.</u> at Ex. 1, ¶ 27. Indeed, New Jersey may have one of the most highly regulated cannabis industries in the country and, despite the increase in dispensaries throughout the state, New Jersey's administrative board (the Cannabis Regulatory Commission) and applicable statutory and administrative oversight is extensive and there is no "gray zone."

That Plaintiff may have committed other federal crimes in the past through other co-conspirators that were willing to violate the law to ship cannabis or marijuana to her in New York despite the law does not provide a carte blanche right to accuse an entire state's extensive statutory and regulatory schema of being a proverbial criminal enterprise.

### c.    Plaintiff's Complaint is Merely a Recitation of the "Magic Words"

Furthermore, Plaintiff is not magically conferred with standing to sue Defendant for injunctive relief under the ADA by merely reciting the requisite elements to state a claim under the ADA without pleading an actual harm suffered.[4] Plaintiff pleads, in a conclusory fashion, that she was automatically harmed by accessing Defendant's website by virtue of being visually impaired, yet confoundingly states in the same breath that she is "determined to access the Website again – following their remediation." *See* Lurie Dec. at Ex. 1, ¶ 41. Further, Plaintiff incredulously alleges that it is her "aim to explore and purchase the broad array of products offered by Defendant with the goal to identify the most suitable products… which could potentially ease the symptoms caused by the disease which caused her blindness and constant headaches with migraine level pain." *See* Lurie Dec. at Ex. 1, ¶ 41. Again, Plaintiff cannot accomplish her stated goal of purchasing cannabis products on Defendant's website for delivery to her home in New York because: (1) products cannot be purchased on Defendant's website for delivery to nonresidents of New Jersey; and (2) it is illegal under federal law for a licensed New Jersey dispensary to engage in interstate sales or to effectuate the delivery of cannabis products out of state. *See* Lurie Dec. at Ex. 1, ¶ 32. Plaintiff has not sufficiently plead that she has a plausible risk of imminent future

---

[4] As is detailed in the Castronova Dec., Defendant corrected this issue the day before this Complaint was filed, and 5 days before Defendant was served. Had Plaintiff waited 24 hours before filing her Complaint, she would have realized that she can now explore Defendant's website to learn about their products using her screen reader. *See* Castronova Dec. at ¶ 6, Ex's C and D.

injury because Defendant's website allegedly has broken links and no alternative text, and Plaintiff's allegation that she intends to return to the website to purchase products for delivery to her home in New York is neither factually nor legally possible as discussed above.

Since June 7, 2024, Plaintiff has filed thirteen (13) ADA lawsuits against various companies for allegedly noncompliant websites. *See* Lurie Dec. at Ex. 5. **Seven** of these lawsuits have been filed against cannabis companies, including several dispensaries located in New Jersey. Each of these complaints contain the same language – and all of the complaints against dispensaries and other cannabis businesses were filed by Plaintiff, by and through the same attorneys, **between October 16, 2024 and October 18, 2024**. In each of the complaints against cannabis businesses, Plaintiff claims to have visited their website over the last 10 days in an attempt to purchase an edible cannabis product to help her with "creativity, energy, focus, depression, and inspiration." *See* Lurie Dec., Ex. 3 at ¶ 33, Ex. 4 at ¶ 32, Ex. 5 at 32, Ex. 6 at ¶ 30. And, indeed, in almost all of these complaints, Plaintiff "learned" of these businesses "as a result of a glowing recommendation by a close friend," and all of the products she claimed she was going to purchase came "recommended" to her.  *See* Lurie Dec., Ex. 1 at ¶¶ 28, 33; Ex. 2 at ¶¶ 28, 32; Ex. 3 at ¶¶ 28, 32; Ex. 4 at ¶ 26.

In fact, each of Plaintiff's complaints contain the same citations to the WCAG guidelines, the same "Web Accessibility Evaluation Tool" and "Sort Site" reports, the same graphic depicting what a "screen reader" does, and identical elements and causes of action merely with the defendants' names replaced. *Compare* Lurie Dec., Ex.'s 1-4. Plaintiff's conduct is a clear abuse of the judicial system and makes a mockery of the ADA. The Southern District's docket is clogged as it is – the repetitive filing of pleadings from a troll that say nothing new and are effective carbon copies of each other does this Court, these defendants, and the orderly administration of justice no

favors. Sadly, these cases are nothing more than a naked attempt by an unscrupulous Plaintiff of "filing first and asking questions later" to compel a quick nuisance value settlement and a financial windfall for Plaintiff. *See* <u>Lurie Dec.</u> at Ex. 5 (showing Plaintiff has filed thirteen almost identical complaints over the prior 6 months).

Based on the foregoing, this Court must dismiss Plaintiff's Complaint under *Fed. R. Civ. P.* 12(b)(1) for the same reasons the Second Circuit cited in *Calcano*.

### d.    This Court Cannot Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims Because Plaintiff Lacks Article III Standing

For a federal court to exercise supplemental jurisdiction over non-federal claims, the court must possess subject matter jurisdiction over the primary federal law claims – either through federal question jurisdiction (Article III standing) or through diversity jurisdiction. *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 304-5 (2d Cir. 2023). 28 U.S.C. § 1367 describes the bounds of supplemental jurisdiction and provides that a federal court may decline to exercise "supplemental jurisdiction over a claim under subsection (a) if… (3) the district court has dismissed all claims over which it has original jurisdiction." It is a well-known maxim that federal courts "have only the power that is authorized by Article III of the constitution *and* the statutes enacted by Congress pursuant thereto." *Id* (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1985)).

As the Supreme Court has provided:

> While the Court has recognized that federal-question jurisdiction over a claim may authorize a federal court to exercise jurisdiction over state-law claims that may be viewed as part of the same case, it has never applied that rationale to permit a federal court to exercise supplemental jurisdiction over a claim that does not itself satisfy those elements of the Article III inquiry, such as constitutional standing, that serve to identify those disputes which are appropriately resolved through the judicial process.

*Id.* (citing *DaimlerChrylser Corp. v. Cuno*, 547 *U.S.* 332 (2006)). Indeed, this Circuit has adopted the Supreme Court's rejection of the idea that "a plaintiff automatically satisfies the injury-in-fact requirement [of Article III standing] whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* (citing *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 341 (2016)). Regardless of the cause of action, Plaintiff must show an injury-in-fact on both her state law and federal claims. And, since Plaintiff cannot establish standing for her ADA claims, she cannot show standing for her derivative state law claims. Thus, the Court cannot exercise supplemental jurisdiction over Plaintiff's state law claims. As Plaintiff's ADA claims must be dismissed for lack of standing, there are no remaining claims that this Court retains original jurisdiction over. Therefore, the Court should dismiss Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## II
## THE COMPLAINT MUST BE DISMISSED FOR LACK OF PROPER VENUE and PERSONAL JURISIDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2) and (3)

Plaintiff has engaged in improper forum shopping by filing this action in the Southern District of New York when venue for her claims clearly lies in New Jersey. As will be discussed below, Plaintiff provides this Court with no legal basis for proper venue. Make no mistake, Plaintiff's barebones statement that filing this case in the Southern District of New York is proper under to 28 U.S.C. § 1391 does not pass scrutiny. As such, the instant case should be dismissed for lack of personal jurisdiction pursuant to *Fed. R. Civ. P.* 12(b)(2) and for improper venue pursuant to *Fed. R. Civ. P.* 12(b)(3).

å

1.    __The Applicable Standard for 12(b)(2) and (3) Motions__

*Federal Rule of Civil Procedure* 12(b)(2) provides, in pertinent part, that "… a party may assert the following defenses by motion… (2) lack of personal jurisdiction; (3) improper venue. . ." *Fed. R. Civ. P.* 12(b)(2)-(3). Regarding jurisdictional matters such as personal jurisdiction and venue, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Bartosiewicz v. Nelsen*, 564 *F. Supp. 3d* 287, 300 (W.D.N.Y. 2021). Further, the Rule provides that "no defense or objection is waived by joining it with one or more defenses or objections in a responsive pleading or in a motion." *Id*. Lastly, "venue in a federal court is governed by 28 U.S.C. § 1391(b)." *Bartosiewicz*, 564 F. Supp. 3d at 300.

For a federal court to have personal jurisdiction over a New Jersey corporation such as Defendant, the defendant: (1) must have been properly served; (2) the court must have a statutory basis for exercising personal jurisdiction; and (3) the exercise of personal jurisdiction must comport with constitutional due process. *Licci v. Lebanese Canadian Bank, SAL*, 673 *F.3d* 50, 59-61 (2d Cir. 2012). A district court's personal jurisdiction over a corporate defendant is determined "by the law of the state in which the court is located." *Id* at 60-61 (citing *Spiegal v. Schulmann*, 604 *F.3d* 72, 76 (2d Cir. 2010)). In determining whether a New York court has personal jurisdiction pursuant to N.Y. C.P.L.R. 302(a) (New York's long-arm statute), "a court must decide (1) whether the defendant transacts any business in New York, and if so, (2) whether this cause of action arises from such a business transaction." *Id* at 60 (citing *Best Van Lines v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)).

Pursuant to 28 U.S.C. § 1391(b), civil actions are properly commenced in either "(1) a judicial district in which any defendant resides, *if all defendants are residents of the state in which the district is located* or… (2) a judicial district *in which a substantial part of the events or*

*omissions giving rise to the claim occurred*, or a substantial part of property that is subject to the action is situated." *Id* (citing 28 U.S.C. § 1391(b)(1), (2) (emphasis added)). In fleshing out the test, this Court provided that "[t]he substantial part test is more rigorous than the minimum contacts tests employed in personal jurisdiction inquiries." *Id* at 300.

In this case, neither specific jurisdiction, general jurisdiction, nor proper venue exists.

**2.    This Court Lacks Personal Jurisdiction Over Defendant Because Defendant Does Not Conduct Business In New York – Nor Could It**

As has been provided in detail above, Defendant operates a licensed cannabis dispensary in West Milford, New Jersey. *See* <u>Castronova Dec.</u> at ¶ 4.  Defendant sells its products pursuant to New Jersey law, which prohibits Defendant from delivering products to customers who are not located within the State of New Jersey. Defendant does not make interstate sales or advertise to out of state customers, nor has it delivered products to customers residing in the State of New York. In fact, Defendant is expressly prohibited from shipping products to customers outside the state of New Jersey via mail or otherwise under both state and Federal law. Defendant's customers may only purchase cannabis products in person at its dispensary in West Milford, or by delivery *if they reside within New Jersey*. Accordingly, Defendant does not "conduct business" in the State of New York.

A clear pattern throughout Plaintiff's Complaint (and the other frivolous complaints she filed against other dispensaries) is a fundamental misunderstanding of the laws governing Defendant's business. Defendant's cannabis products, which are classified as Schedule I controlled substances under Federal law, cannot be sold or transported to customers outside the State of New Jersey. Defendant is not some unlicensed business operating in a regulatory grey area, but rather is a highly regulated and licensed business which regulated and extensively overseen by the New Jersey Cannabis Regulatory Commission.  Defendant is not a fly-by-night criminal enterprise;

rather, it operates a brick-and-mortar cannabis dispensary in West Milford, New Jersey. The only contact that Defendant has with this forum is that its website is accessible to residents of New York – but this is an inherent property of all websites. The mere fact that Defendant's website is accessible within the geographic boundaries of New York does not establish the "substantial contacts" necessary for New York to serve as a proper venue for this case, and certainly does not rise to the level of a "continuous and systematic" conducting of business within New York. *See Reed Int'l, Inc. v. Afg. Int'l Bank*, 657 F. Supp. 3d 287, 305 (S.D.N.Y. 2023) (citing *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009)).[5] Accordingly, the purported factual premise underlying Plaintiff's claims – that she accessed Defendant's website to order cannabis products for delivery to home in New York – is illegal and was clearly stated to manufacture a basis to venue this case in New York.

Lastly, Plaintiff's reliance on *Ford Motor Co. v. Mont. Eigth Judicial Dist. Court.*, 141 *S.Ct.* 1017 (2021) for the proposition that "personal jurisdiction can be found as long as the company conducted business in the consumer's home state that relates in some way to the consumer's injuries, such as engaging in other transactions for similar products" is misplaced. *See* Complaint at p. 4., fn. 3. Defendant ***does not (and can not) conduct any business in New York***; it does not ship products to New York, it does not deliver products to residents in New York and does not advertise in New York. *Ford Motor Co.* is plainly inapplicable here as it presumes the ability of a given plaintiff to enter into a transaction with a business via their website, which is not the case here.

---

[5] "[i]nternet activity is an insufficient basis for personal jurisdiction '[b]ecause websites are generally speaking, equally accessible everywhere, the mere availability of the site to users in New York, standing alone, does not amount to transacting business in the state for purposes of § 302(a).'"

Thus, this Court must dismiss Plaintiff's complaint for lack of personal jurisdiction pursuant to *Fed. R. Civ. P.* 12(b)(2).

**3.    <u>Venue Is Not Proper In New York</u>**

A cursory glance at Plaintiff's complaint reveals that it is defective as to venue. First, venue is improper under 28 U.S.C. §1391(b)(1) because Defendant, a New Jersey corporation, does not reside in New York. Accordingly, to establish that New York is the proper venue for this case, Plaintiff must meet the requirements of 28 U.S.C. §1391(b)(2), which convers venue in a "judicial district in which a substantial portion of the events occurred, or a substantial part of the property that is subject to the action is situated." 28 U.S.C. § 1391(b)(2). The Second Circuit has provided that "the substantial events or omissions requirement does limit the forums available to plaintiffs." *Daniels v. Am. Bd. of Emergency Med.*, 428 *F.3d* 408, 432 (2d Cir 2005). Indeed, the Court held that "as the Supreme Court explained before the amendment of section 1391, in most instances, the purpose of statutorily defined venue is to protect the <u>defendant</u> against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Id.* (citing *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-184 (1979)) (emphasis added).

Of immense import is the 2^(nd) Circuit's mention of the fact that "the current statutory language still favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be substantial and is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Id.* (citing *Cottman Transmission Sys. v. Martino*, 36 *F.3d* 291, 294 (3d Cir. 1994)). To defeat a venue challenge under § 1391(b)(2) a two-part inquiry is appropriate:

> First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims… Second, the Court should determine whether a substantial part of those acts or omissions occurred in the district where the suit was

> filed, whether significant events or omissions material to those
> claims… have occurred in the district in question.

*Id.* (citing *Gulf Ins. Co. v. Glasbrenner*, 417 *F.3d* 353, 357 (2d Cir. 2005)). The "substantiality" portion of the of the analysis, which is critical, is "more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Id. at 433.*

Plaintiff claims that venue is proper because she accessed Defendant's website from her home in New York "on numerous occasions," and that Defendant "conduct[s] a substantial amount of business in this District." *See* <u>Lurie Dec.</u> at Ex. 1, ¶ 9. First, Defendant conducts ***zero*** business in the Southern District of New York. Defendant may only sell products at its physical store in New Jersey and can only deliver products to physical residences located in New Jersey. Plaintiff's claim is nakedly and demonstratively false.

Second, Plaintiff's claim that she accessed the website "on numerous occasions" is belied by her own pleading: she claims that she visited Defendant's website on one occasion (either August 10, 2024 or October 10, 2024 – the exact date is unclear as it appears Plaintiff forgot to change one of the dates from their other filings). *Cf* <u>Lurie Dec.</u> at Ex. 1, ¶¶ 25, 28. She claims that she was unable to order products from Defendant's website because the pictures on the website lacked alternative text. This is the *only* connection that Plaintiff's Complaint has to this district – and this cannot be construed as a "substantial portion" of the events when Defendant's business is located in New Jersey, is licensed in New Jersey, and only conducts business in New Jersey (and cannot conduct business or advertise elsewhere due to the New Jersey regulations governing its business). Of note, Defendant's website containing the alleged ADA violations was constructed in New Jersey and services a business only located in New Jersey.

19

Defendant should not be "haled into a remote district" that has no relationship to Plaintiff's alleged claims. *If* there is a proper venue for this action, it is plainly the District of New Jersey. Therefore, this Court must dismiss Plaintiff's complaint for improper venue pursuant to *Fed. R. Civ. P.* 12(b)(3).

### III
### PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)

While *Fed R. Civ. P.* 12(b)(6) instructs courts to conduct a generous review of pleadings to determine if a cause of action has been properly pled, it simultaneously imposes a more stringent analysis of conclusory claims to weed out "good eggs" from frivolous complaints. This Complaint is largely the latter as it lacks specificity and is replete with conclusory statements which do not give rise to an actionable cause of action against Defendant. Case in point, the premise of Plaintiff's central allegation – that she accessed to Defendant's website to purchase cannabis products online for delivery to her home in New York – is illegal under Federal and New Jersey law. Accordingly, Plaintiff's Complaint fails to state a cause of action under the ADA against Defendant.

1.    <u>The Standard of Review under Fed. R. Civ. P. 12(b)(6)</u>

When deciding a motion to dismiss under *Fed. R. Civ. P.* 12(b)(6), the Court must read the complaint generously, accepting as true the factual allegations in the complaint and drawing all inferences in favor of the pleader. *Bolt Elec. v. City of New York*, 53 *F.3d* 465, 469 (2d Cir. 1995); *Mills v. Polar Molecular Corp.*, 12 *F.3d* 1170, 1174 (2d Cir. 1993).  When presented with a motion to dismiss presented under *Fed. R. Civ. P.* 12(b)(6), "the court must accept as true the factual allegations in the complaint, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, __ (1993); *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992), *cert.*

*denied*, 507 U.S. 961, ___ (1993), and draw all reasonable inferences in favor of the plaintiff. *Walker*, 974 F.2d at 298." *Bolt Elec*, *supra*, 53 F.3d at 469. *See also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 *F.3d* 229, 237 (2d Cir.2007) ("In considering a motion to dismiss ... the court is to accept as true all facts alleged in the complaint, and must "draw all reasonable inferences in favor of the plaintiff");

However, this is not the end of the Court's analysis because, when looking into the Complaint, the Court must ensure that the Plaintiff has satisfied their pleading obligations. As recently discussed in *Feldheim v. Financial Recovery Services, Inc*., 257 *F.Supp.3d* 361, 366-367 (S.D.N.Y. 2017), it is:

> a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alteration, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

Here, the Plaintiff's Complaint must contain plausible allegations and cannot simply present conclusory statements, especially in the context of claims that require specificity in pleadings. Our Courts consistently reiterate that pleadings that offer "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do… nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, *supra*, at 678. Indeed, "the pleading standard Rule 8 announces does not require detailed factual allegations, but it

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Tombly* at 555) (internal quotations omitted).

Accordingly, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "But where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n] that the pleader is entitled to relief." *Id* at 679. Courts are further directed to apply a two-pronged approach with respect to pleading analysis. *Id* at 679. First, a Court must identify pleadings that are no more than conclusions and disregard them as they are not entitled to the assumption of truth. *Id* at 679. Second, we assume the well-pleaded factual allegations are true, and then determine whether they "plausibly give rise to an entitlement of relief." *Id*. Most noteworthy is that the factual claims in a pleading must be nudged "across the line from *conceivable* to *plausible*." *Id*.

## 2. <u>Plaintiff's Complaint Fails to Meet the *Iqbal/Twombly* Standard</u>

Plaintiff's causes of action are nothing more than a threadbare regurgitation of the elements required to bring a cause of action under the ADA, New York State Civil Rights law and New York City Human Rights Law, which are supported by mere conclusory statements. The New York State Appellate Division, Second Department, has provided that "as a general matter, the scope of the disability discrimination provisions of the State Human Rights Law are similar to those of the ADA." *Gordon v. PL Long Beach, LLC*, 74 *A.D.3d* 880, 885-6 (N.Y. App. Div. 2d. Dep't 2010) While the New York City Human Rights Law affords a broader scope as to what defines a disability, it does not materially differ as to the protections the statute ascribes for

individuals that suffer from these disabilities. *Goldenberg v. Metropolitan Transp. Auth.*, 217 *N.Y.S.3d* 429, 435 (Sup. Ct. N.Y. Cty. 2024).

Based on the motion to dismiss standard discussed above, "***threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.***" *Iqbal* at 678 (emphasis added). For example, Plaintiff's central allegations are: (1) she attempted to visit Defendant's website to order cannabis edibles for delivery to her home in New York; (2) her screen reader software was unable to give her an accurate description of the product because Defendant's website lacked alternative text; and (3) she "is determined to access the Website again – following [the] remediation [of the issues,]" in order to "explore and purchase from the broad array of products offered by Defendant…" *See* Lurie Dec. at Ex. 1, ¶¶ 28-35, 41. Plaintiff's "allegations" cannot plausibly give rise to an entitlement of relief.

First, and it must appear like a broken record to the Court that we have to repeat same, Plaintiff cannot purchase cannabis products from Defendant's website for delivery to her home in New York, nor can Defendant legally ship or deliver products to customers outside the State of New Jersey. *See* N.J.S.A. § 24:6I-44(j)(1) (dispensaries that deliver cannabis products may only do so via a licensed delivery service, and these deliveries may only be made to customers at their personal or temporary residence within the State of New Jersey). Second, Defendant does not advertise interstate sales or delivery of cannabis products on its website or otherwise because doing is illegal under Federal law, and Defendant's website expressly informs customers that transportation across state lines is illegal. *See* 21 U.S.C. §§ 841(a)(1)-(2); *see also* 21 U.S.C.S. §§ 812(c)(c)(10), (17); *see also* Castronova Dec. at Ex. B.

In addition, Plaintiff's complaint suffers from a fatal defect: futility. Plaintiff requests that this court enter a preliminary, and permanent, injunction against Defendant from violating the

ADA. What Plaintiff fails to provide is that Defendant has already rectified the issues identified by Plaintiff, and Defendant did so prior to being served with this Complaint. *See* <u>Castronova Dec.</u> at ¶¶ 6-8, Ex.'s C and D. There are no accessibility violations to be rectified at this point – injunctive relief would not solve Plaintiff's original claims against Defendant as these issues have already been solved.

Is this Court to believe that based on a "glowing recommendation" from an unnamed friend, Plaintiff set out to purchase cannabis products online from thirteen separate dispensaries across the United States for delivery to her house in New York between October 16 and October 18, 2024 (all of whom are now being sued by Plaintiff under the ADA), which is illegal under federal and state law? *See* <u>Lurie Dec.</u> at Ex. 5. Similarly, is it plausible that Plaintiff (who is visually impaired) intended on traveling to and from her home in New York to West Milford, New Jersey (an approximately 41-mile drive) to purchase cannabis products at Defendant's dispensary, thus committing a felony by crossing state lines (when she could do so from the three licensed New York facilities within a few short blocks from her home)?

Indeed, Plaintiff's allegations are clearly designed to create the false impression that due to access barriers, she cannot purchase cannabis products from Defendant's business even though there are a number of licensed dispensaries close to her home in New York.[6] Plaintiff pleads, in a conclusory fashion, that she was harmed because Defendant's website lacked alternative text, and therefore, is automatically entitled to relief under the ADA. This is nothing more than the "the-

---

[6] Numerous dispensaries exist within a five-mile radius of Plaintiff's residence at 205 Avenue A, Apartment 2E, New York New York 10009. *See*, e.g., https://weedmaps.com/dispensaries/in/united-states/new-york/new-york-city/manhattan. *See, also,* https://experience.arcgis.com/experience/f26c9264d6f6473ca8dff70f238b7756/#data_ s=id%3AdataSource_1-190505741a4-layer-16%3A713 which shows at least six licensed dispensaries within walking distance from Plaintiff's home.

defendant-unlawfully-harmed-me" scenario described by Justice Kennedy in *Iqbal*, which is not sufficient to support a claim under the ADA. *Iqbal*, 556 *U.S.* at 678.

In short, Plaintiff's complaint lacks factual specificity or any sort of factual enhancement, asserts allegations which are not plausible and, if accepted as true, establish that Defendant intended to commit an illegal act to purchase products from Defendant, and presents allegations which merely regurgitate the legal elements required to present claims under the ADA and New York Civil Rights law and which have been re-used in twelve other complaints filed by Plaintiff over the last 6 months. Based on the foregoing, this Complaint must be dismissed pursuant to *Fed. R. Civ. P.* 12(b)(6) for failing to state a claim upon which may be granted.

## CONCLUSION

This Court must starve the trolls. Plaintiffs such as this must be made to recognize that the serial filing of such cut-and-paste complaints against out-of-state cannabis dispensaries, which are licensed and legitimate, and which implicate an intent to commit a federal crime will not be permitted in this District any longer. The docket is overwhelmed with such frivolity.

For the foregoing reasons and authorities set forth herein, the Court should enter an Order dismissing Plaintiff's Complaint pursuant to *Fed. R. Civ. P.* 12(b)(1)-(3), and (6) as well as awarding other such relief to Defendant as the Court deems just and reasonable.

/s/ Joshua M. Lurie, Esq.
Shapiro Croland Reiser Apfel & Di Iorio, LLP
One Grand Central Plaza, Suite 4600
New York, NY 10165
*Attorneys for Defendants*

Dated: November 12, 2024

25